68 525
88 113

GEORGE F. HOLMES vs. JOHN S. FRENCH.

Cumberland. Decided December 2, 1878.

*Interest. Usury. Promissory notes.*

R. S., of 1857, c. 45, relating to usury, was unconditionally repealed by St. of 1870, c. 169, which was expressly excepted by the general repealing act, c. 174, St. 1870.

To a promissory note in which is reserved and on which was received excessive interest, given May 13, 1857, while R. S. of 1841, c. 69, was in force, and sued upon August 5, 1874, after the unconditional repeal of R. S. 1857, c. 45, usury is no defense, and the maker of the note can claim no deductions for excessive interest reserved or paid.

ON EXCEPTIONS, from the superior court.

ASSUMPSIT, on a promissory note dated May 30, 1857, by the indorsee, to whom it was indorsed after maturity, against the maker.

The justice of the superior court tried the action without a jury, and found as matters of fact, that, a certain sum as interest, exceeding six per cent, was included in the principal of the note ; that additional sums had been paid by the defendant to the payee, at different times, and by their mutual consent, applied to the subsequently accruing interest, exceeding the rate of six per cent, and that there was no proof of actual knowledge on the plaintiff's part, of the payment or inclusion of interest exceeding six per cent. And the court ruled as matter of law that, the St. of 1870, c. 169, having repealed without exception R. S. of 1857, c. 45, the reservation of excessive interest in the principal of the note, or the receipt of such interest after the maturity, affords no legal ground of defense ; and that the amount so received and applied as excessive interest, is not to be deducted from the amount due on the note, and that the plaintiff was entitled to judgment for the amount of the note according to its tenor.

The defendant alleged exceptions.

*A. A. Strout & G. F. Holmes,* for the plaintiff.

*J. J. Perry,* for the defendant, contended that his clients had vested rights under the statutes in force when the contract was

made ; that these statutes had never been unqualifiedly repealed ; that even if the complex legislation of 1870 should be construed as an unqualified repeal of R. S. of 1857, c. 45, yet those statutes, not taking effect till 1858, long after the date of the note, did not deprive him of his rights under R. S. of 1841, c. 69, and amendments thereto, because the repealing act of 1857, § 2, provided that "the acts declared to be repealed remain in force . . . for the preservation of all rights and their remedies."

To the point that a note given for interest above the legal rate was without legal consideration, counsel cited *Goodrich* v. *Buzzell,* 40 Maine, 500. The defense is open to an action by the indorsee. *Wing* v. *Dunn,* 24 Maine, 128. *Tufts* v. *Shepherd,* 49 Maine, 312.

The consideration being in part at least for excessive interest which the statute in terms declared to be "void," a simple repeal of the statute would not validate it. *Hathaway* v. *Moran,* 44 Maine, 67. *Robinson* v. *Barrows,* 48 Maine, 186. And that part of the consideration representing excessive interest should be deducted from the principal. And not only the usurious interest reserved but also that received. *Larrabee* v. *Lumbert,* 32 Maine, 97.

Other points taken by counsel are stated in the opinion. .

VIRGIN, J. The Stat. of 1870, c. 124, § 1, provided that, in the absence of any agreement in writing, "the legal rate of interest shall be six per cent per annum ;" and it took effect on March 11, 1870. Section 2 repealed "all acts and parts of acts inconsistent therewith ;" and § 1, c. 45, R. S. of 1857, being the only section or part of a section "inconsistent therewith," was alone thereby repealed, leaving §§ 2 and 3 (pertaining to remedies in cases of excessive interest) as amended by Stats. of 1862, c. 136, and of 1863, c. 209, in force and unmodified.

The Stat. of 1870, c. 169, provided "that c. 45, of R. S. of 1857, and all acts additional thereto and amendatory thereof, passed prior to 1870, are hereby repealed." Unless repealed, c. 169 became "effective in thirty days after the recess of the legislature passing it," inasmuch as no "different time is named

therein." R. S., c. 1, § 3. The legislature which passed the act finally adjourned on March 24, 1870 ; and the act therefore took effect, unless previously repealed, on April 23, 1870. The effect was to repeal §§ 2 and 3 of c. 45, R. S. of 1857, above mentioned, § 1 having already been repealed by Stat. of 1870, c. 124.

The general repealing act of 1870, c. 174, § 1, provides as follows : " The public acts passed during the years hereafter named and herein designated are repealed, except so far as they are preserved or excepted in the following sections ; but no other acts are hereby repealed :

" 1857. All the chapters of R. S. of 1857, numbered one to one hundred and forty-three, inclusive. . . 1870. Chapters numbered seventy seven to one hundred and seventy, inclusive, except . . c. 169." This general repealing act, being preliminary to the enactment of the new revision, did not take effect until February 1, 1871.

What were the intention and purpose of the legislature as they are indicated by the several enactments above mentioned ? It appears to us that only one answer can be given, viz., to unqualifiedly repeal the whole of c. 45, R. S. of 1857.

As already seen, § 1, c. 45, R. S. of 1857, being inconsistent with § 1, c. 124, Stat. of 1870, was repealed by § 2, c. 124, leaving §§ 2 and 3, of c. 45, in full force. Subsequently, the same legislature enacted c. 169, purporting in terms to repeal c. 45 and all acts additional thereto or amendatory thereof, passed prior to 1870. These terms included in the repeal the acts of 1862 and 1863, cc. 136 and 209, but excluded c. 124, of 1870. The repeal of c. 45 and the amendatory and additional acts named is without condition or reservation. It took effect April 23, 1870. The general repealing act, c. 174 of 1870, expressly excepts c. 169, thus leaving it in full force.

It is contended, however, that, notwithstanding these facts, the legislature really intended to repeal c. 169 ; and that " by implication the general repealing act did repeal it ; " and *Coe* v. *Co. Commissioners*, 64 Maine, 31, is cited as an authority to sustain this view. But we are not able to perceive how one statute can " by implication " repeal another in the absence of any inconsis-

tency in their provisions, and when the former statute expressly excepts the latter from repeal. Neither do we understand how *Coe* v. *Co. Commissioners* can reasonably be considered an authority for the defendant's position. In that case the principal fact was the antipode of the main fact in this. The subsequent statute there purported to expressly repeal the repealing statute itself before the latter took effect, both being passed by the same legislature and taking effect at the same time. In reading the intention of the legislature in the language and purpose of the act, the court might well say, "the only possible inference to be drawn is that the legislature intended that the former act should have no force whatever; that it should never come into life for any purpose." While in the case at bar, instead of c. 169 being expressly repealed by the general repealing act, it is expressly saved from repeal; and we may add that the only possible inference to be drawn is that the legislature intended that c. 169 should have force; that it should come into life for the purpose of repealing unqualifiedly c. 45, R. S. of 1857, and that it has fulfilled that purpose.

The case finds that a certain sum as interest, exceeding six per cent, is included in the principal of the note in suit; and the defendant contends that therefore the note, to the extent of such excess, is in contravention of the statute of usury (R. S. of 1841, c. 69), and the consideration to that extent illegal. *Goodrich* v. *Buzzell*, 40 Maine, 500. That the statute named rests upon principles similar to that prohibiting the sale of intoxicating liquors. *Ellsworth* v. *Mitchell*, 31 Maine, 247, 250. And that the repeal of the statute of usury does not validate this note so far as it is usurious. *Hathaway* v. *Moran*, 44 Maine, 67.

Had this note been given under the Stat. of 1821, c. 19, which was in terms prohibitory, and declared that all contracts made in violation thereof "shall be void," there would be much force in the proposition, and reason as well as authority would sustain us in holding that the note would not be made valid by the mere repeal of the statute, the violation of which made it void. But the Stat. of 1821, c. 19, was very materially changed in 1834. Stat. 1834, c. 122. Its penal provisions were eliminated, so that

when it became embodied in the revision of 1841, (R. S. of 1841, c. 69, in force when the note in suit was made) it became remedial in its character. Chapter 69 fixed the legal rate of interest at six per cent, and provided two remedies in behalf of debtor parties to contracts in which was reserved usurious interest, viz: 1. In actions on such contracts, debtors could avoid the usurious portion by proving the usury under the general issue, and recover costs. 2. Whenever they had paid usurious interest, recover it back in an action commenced within one year after payment. *Tuxbury* v. *Abbott*, 59 Maine, 466, 471. With the latter we now have nothing to do. The former is contingent upon the commencement of an action by the proper party. It is somewhat penal in its consequences; but the debtor cannot resort to it until he is put upon his defense by an action against him. So long as the remedy depends upon, or is subject to this contingency, the right to resort to it is but inchoate at best. It is not founded upon the obligation of the contract, and is in nowise a vested right, unassailable under the constitution. It is simply a remedy created by the statute, based upon what the legislature at the time considered the public good required; and the same authority, actuated by the same motives, recognized the change of circumstances which warranted their taking away what they had previously given, by a total abrogation of the statute which gave the remedy. This they had an undoubted right to do; and this they have done. *Oriental Bank* v. *Freeze*, 18 Maine, 109.

In *Butler* v. *Palmer*, 1 Hill (N. Y.), 324, Cowan, J., after reviewing the authorities as to the effect of a repealing statute, says: " The amount of the whole comes to this, that a repealing statute is such an express enactment as necessarily divests all inchoate rights which have arisen under the statute, which it destroys. These rights are but incident to the statute, and fall with it unless saved by express words in the repealing clause." So in *Curtis* v. *Leavitt*, 15 N. Y. 9, 153, Brown, J., says: " The borrower can have no vested interest in the penalty or forfeiture which follows the proof of usury in an action where that defense is interposed. Whatever right he had was contingent upon the fact of the usury being established upon the trial. This the

repealing act declares shall not be done. It makes no difference whether the forfeiture is given to the borrower, to be recovered in an action, as under the gaming statutes, or whether it is given him by way of defense to an action brought to enforce the contract. The form of the remedy is of no moment." In the same case Selden, J., says: "Usury being a mere statutory defense, not founded upon any common law right, either legal or equitable, it was clearly within the power of the legislature to take it away." And discussing the general effect of a repealing statute in *Key* v. *Goodwin*, 4 Moore & Payne, 351, Lord C. J. Tindall says: The repealing statutes "obliterates the statute repealed, as completely as if it had not been passed, and it must be considered as a law that never existed, except for the purpose of those actions which were commenced, prosecuted and concluded while it was existing law." In *Lowell* v. *Johnson*, 14 Maine, 240, the question was not raised.

*Exceptions overruled.*

APPLETON, C. J., BARROWS, DANFORTH and LIBBEY, JJ., concurred.